***NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK PETRINO,<br><br>       Plaintiff,<br><br>v.<br><br>CARDINAL D. CASTILLO, *et al.*,<br><br>       Defendants. | Civil Action No. 21-19034 (FLW)<br><br>OPINION |

**WOLFSON, Chief Judge:**

*Pro se* plaintiff Frederick Petrino ("Plaintiff" or "Petrino"), a former military officer, brings constitutional claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against Defendants Cardinal D. Castillo ("Castillo"), David A. Wilkins ("Wilkins"), and Jeremias Smith ("Smith") (collectively, "Defendants"), three Department of Defense ("DoD") employees at Joint Base McGuire Ft. Dix Lakehurst ("Joint Base MDL"), in their individual capacities. Plaintiff alleges that in connection with a confrontation at the Joint Base MDL entrance, Defendants violated Plaintiff's First Amendment rights by arresting him for engaging in expressive conduct, his Fourth Amendment rights by falsely arresting/imprisoning him and maliciously prosecuting this case against him, and his Fifth Amendment rights by fabricating evidence for his prosecution.

Presently before the Court, is a motion to dismiss filed by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), in which they argue that Plaintiff's *Bivens* claims are not cognizable and, even if they are, qualified immunity shields Defendants from liability. For the reasons set forth below, Defendants' motion is **GRANTED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    A. **Factual Background**

The Court assumes the facts set forth in the Amended Complaint to be true for the purposes of the present motion.

On December 21, 2019, Plaintiff and his wife arrived at the Wrightstown Gate entrance to Joint Base MDL. (ECF No. 14 ("Am. Compl."), 6.) According to Plaintiff, he and his wife showed the guard, Defendant Smith, their military identification cards; however, Smith informed them that the cards were terminated. (*Id.*) Although the dates on the cards suggested that they were unexpired and still valid, Smith asked Plaintiff if he knew why the cards were terminated. (*Id.*) Plaintiff informed Smith that he did not, but that his military pension had commenced in October 2019. (*Id.*) As Plaintiff was looking for an alternate form of military identification, Smith allegedly asked Plaintiff and his wife to park in a designated parking area near the gate. (*Id.*) Also, according to Plaintiff, Smith did not perform a military salute, which Plaintiff was accustomed to receiving. (*Id.*)

A few minutes later, Defendant Castillo, a DoD police officer, approached Plaintiff's vehicle and asked Plaintiff if he knew why the military identification cards were terminated. (*Id.*) Again, Plaintiff allegedly responded that it might have been because he had recently begun receiving his military pension. (*Id.*) According to Plaintiff, he then asked Castillo if he could obtain new identification cards, but Castillo replied that it would not be possible because the unit responsible for processing such a request was not present that day. (*Id.*)

Plaintiff alleges that since Castillo did not offer any other solutions, Plaintiff felt "disrespected" by Smith and Castillo. Plaintiff alleges that he became "frustrated" and "upset," and that he complained about the treatment shown to him and his wife. (*Id.*) After a disagreement

about Castillo's failure to salute Plaintiff, Plaintiff then allegedly asked to speak to a post commander to resolve the identification issue. (*Id.*) According to Plaintiff, Castillo responded "OK," but he also told Plaintiff "you don't curse at me."[1] (*Id.*) Based on Castillo's response, and his subsequent actions, which allegedly included making calls on his radio, Plaintiff then "became anxious and concerned and followed [Castillo] to ask what was happening." (*Id.* at 7.)

At this time, Plaintiff alleges that although he wanted to leave the base, he could not because Castillo did not return the identification cards, did not provide receipts, and did not provide instructions as to how Plaintiff should exit the post, as there were barricades that made exiting difficult. (*Id.*) Following his interaction with Castillo, Plaintiff allegedly moved towards his vehicle, before he was stopped by Defendant Smith. (*Id.*) According to Plaintiff, he became "very anxious and concerned" that Castillo and Smith were "attempting to escalate the situation," and he was "fearful that he would face legal problems that could jeopardize his career." (*Id.*) When Plaintiff was stopped by Smith, Plaintiff alleges that he complained about his treatment, including Smith's failure to salute him. (*Id.*) He then purportedly resumed walking to his vehicle. (*Id.*) According to Plaintiff, it was at this time that Smith told Plaintiff that he was obstructing him from carrying out his duties. (*Id.*)

Plaintiff further alleges that immediately following his encounter with Smith, squad cars arrived at the gate. (*Id.*) Plaintiff claims that Technical Sergeant Haines handcuffed Plaintiff tightly and locked him in a squad car, but told him he was not under arrest. (*Id.*) Several minutes later, however, Plaintiff alleges that DoD Police Officer Defendant Wilkins, who was Smith and Castillo's supervisor, then approached the squad car and told Plaintiff that he does not tolerate

---

[1] Plaintiff alleges that he did not curse at Castillo. (Am. Compl., at 6.)

cursing at his employees. (*Id.* at 8.) Wilkins allegedly informed Plaintiff that he was under arrest for assault and told Plaintiff's wife that he (Plaintiff) had poked Officers Smith and Castillo. (*Id.*)

Plaintiff alleges that he was then transported to the security detachment for processing and was locked in a cell for over an hour, although he is not certain on the exact amount of time. (*Id.*) Officer Wilkins then took photos of, and DNA and fingerprints from, Plaintiff, and Smith gave Plaintiff a citation for resisting arrest. (*Id.*) Plaintiff alleges that he "later learned from reading the incident report that the officers presented a fabricated story to a Judge Advocate General (JAG) officer who determined based on the false evidence that there was probable cause for taking DNA." (*Id.*) Specifically, Plaintiff alleges that when Sergeant Haines was handcuffing him, Plaintiff was "simply reaching for his wallet," not attempting to resist arrest. (*Id.*) In addition, Plaintiff alleges that Defendant Smith fabricated the detail that he told Plaintiff he was under arrest and asked him to turn around to be handcuffed, when in fact this did not happen. (*Id.*)

**B.     Procedural History**

On October 19, 2021, Plaintiff filed the instant action. (ECF No. 1.) On May 11, 2022, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 11.) Instead of responding to that motion, on May 23, 2022, Plaintiff filed an Amended Complaint, which is the operative pleading in the lawsuit. (Am. Compl.) As a result, on June 21, 2022, the Court dismissed Defendants' initial motion to dismiss as moot. (ECF No. 17.)

Plaintiff's Amended Complaint asserts four causes of action under *Bivens*: (1) First Amendment retaliation against all Defendants for arresting and prosecuting him without probable cause in retaliation for engaging in protected activity, namely complaining about mistreatment at the base; (2) false arrest and false imprisonment under the Fourth Amendment against all Defendants for handcuffing and arresting Plaintiff without probable cause; (3) fabrication of

evidence against Defendants Castillo and Smith under the Fifth Amendment for filing false reports and lying to superiors and government attorneys; and (4) malicious prosecution under the Fourth Amendment against all Defendants for initiating a criminal proceeding against him in retaliation for engaging in protected activity, such as complaining about his mistreatment and asking to speak with a post commander. (Am. Compl., 7.)

On June 23, 2022, Defendants filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 18.) On July 18, 2022, Plaintiff filed opposition, and on July 25, 2022, Defendants filed their reply. (ECF Nos. 22 and 24.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level,

so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

Finally, because Plaintiff is proceeding *pro se*, I construe his Amended Complaint liberally and in the interests of substantial justice. *See*, *e.g.*, *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally."); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d. Cir. 2003) ("apply[ing] the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name," on a motion to dismiss) (citations omitted). Even so, I am not required to credit "bald assertions" or "legal conclusions" simply because Plaintiffs are proceeding *pro se*. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A *pro se* complaint may just as readily be dismissed if it sets forth allegations which cannot be construed to supply facts supporting a claim for relief. *See Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981); *Grohs v. Yatauro*, 984 F. Supp. 3d 273, 282 (D.N.J. 2013).

### III.  DISCUSSION

Plaintiff's Amended Complaint alleges that he may recover under *Bivens* because Defendants violated his First Amendment, Fourth Amendment, and Fifth Amendment rights while acting under color of federal law. On this motion, Defendants argue that Plaintiff has failed to

allege any facts to properly state a claim. Specifically, with respect to Plaintiff's retaliation claim, Defendants emphasize that the Supreme Court recently foreclosed First Amendment retaliation as a *Bivens* cause of action in *Egbert v. Boule*, 142 S.Ct. 1793 (2022). (Def. Mov. Br., 10-11.) As for Plaintiff's remaining claims, Defendants submit that Plaintiff seeks a "judge-made" *Bivens* remedy against a new category of *Bivens* Defendants—DoD employees at a military base—for claims of false arrest/false imprisonment and malicious prosecution under the Fourth Amendment and fabrication of evidence under the Fifth Amendment. Specifically, Defendants argue that Plaintiff's claims "implicate serious military and national security concerns" and they are asserted against a different category of defendants than in *Bivens* or *Davis v. Passman*, 442 U.S. 228 (1979)—DoD employees as opposed to FBI agents (*Bivens*) or a congressman (*Davis*). (Def. Mov. Br., 11-12.) In addition, Defendants contend that even apart from the military and national security contexts under which these claims arise, courts have also found that malicious prosecution claims independently present new contexts because *Bivens* involved false arrest claims resulting from a warrantless search. (*Id.* at 14.) Further, unlike in *Bivens*, Defendants argue that Plaintiff does not allege that Defendants used excessive force against him, nor does Plaintiff's Fifth Amendment fabrication of evidence claim have any "resemblance to the gender discrimination claim at issue in *Davis*." (*Id.*) Lastly, Defendants argue that qualified immunity shields Defendants from Plaintiff's First and Fourth Amendment claims. (*Id.* at 22-24.)

In *Bivens*, the Supreme Court recognized a private cause of action to recover damages against federal actors for constitutional violations. 403 U.S. at 396-98. *Bivens* actions are the federal counterpart to section 1983 claims brought against state officials. *See Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)). On this motion, the Court addresses the following *Bivens* claims: First Amendment

7

retaliation, false arrest/false imprisonment and malicious prosecution under the Fourth Amendment, and fabrication of evidence under the Fifth Amendment. To state a claim under *Bivens*, a claimant must show (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

Importantly, in *Ziglar v. Abbasi*, the Supreme Court explained that it has only recognized a *Bivens* remedy in three cases: (1) *Bivens* itself, which implied a damages action to compensate persons whose Fourth Amendment right to be free from unreasonable searches and seizures was violated by federal officers; (2) *Davis*, which recognized a right under the Due Process Clause of the Fifth Amendment for an administrative assistant to sue a member of congress for her firing because she was a women; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), in which the Court held that the Eighth Amendment's Cruel and Unusual Punishment Clause provides a damages remedy for failure to provide adequate medical care. ⸺ U.S. ⸺, 137 S. Ct. 1843, 1854, 198 L.Ed.2d 290 (2017*)*. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself. *Id.* at 1855. As such, "expanding the *Bivens* remedy" beyond these contexts "is now a 'disfavored' judicial activity." *Id.* Indeed, as relevant here, the Supreme Court in *Ziglar* explained that "a case can present a new [factual] context despite arising under an amendment in one of the three recognized *Bivens* claims." *See Karkalas v. Marks*, No. 19-948, 2019 WL 3492232, at *9 (E.D. Pa. July 31, 2019), *aff'd*, 845 Fed. Appx. 114 (3d Cir. 2021) (finding that the plaintiff's *Bivens* claim arising under the Fourth Amendment presented a new context).

Because expansion of *Bivens* is "disfavored," courts must use "caution before extending *Bivens* into any new context." *Id.* "A *Bivens* remedy will not be available if there are special factors

8

counselling hesitation in the absence of affirmative action by Congress." *Id.* A context is "new"—and therefore requires a special factors analysis—if it is "different in a meaningful way from previous *Bivens* cases decided by this Court." *Id.* at 1859.

For the reasons explained below, I find that Plaintiff has failed to state a claim, under *Bivens*, for false arrest/false imprisonment and malicious prosecution under the Fourth Amendment and fabrication of evidence under the Fifth Amendment.

### A. First Amendment Retaliation

As an initial matter, Plaintiff has conceded that he cannot pursue Count I of his Amended Complaint for First Amendment retaliation "in light of the recent decision in *Egbert v. Boule*, 142 S.Ct. 1793 (2022)." (Pl. Opp., 10.) Indeed, I note that the Supreme Court has never implied a *Bivens* action under any clause of the First Amendment. *See Reichle v. Howards*, 566 U.S. 658, 663 n. 4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Further, the Third Circuit more recently refused to extend *Bivens* to a First Amendment retaliation claim brought against an agent of the Transportation Safety Administration. *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017). Moreover, several courts have declined to extend *Bivens* to First Amendment claims in the prison context after *Vanderklok*. *See e.g.*, *Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139-40, 140 n. 3 (3d Cir. 2018) (dismissing First Amendment retaliation claim brought by federal prisoner against correctional staff and observing that "a First Amendment retaliation claim ... may not apply to a *Bivens* claim against a federal official"); *Alexander v. Ortiz*, No. 15-6981, 2018 WL 1399302, *1 (D.N.J. Mar. 20, 2018) (refusing to extend *Bivens* to federal prisoner's suit against supervisor for discrimination and retaliation); *Railey v. Ebbert*, 407 F. Supp. 3d 510, 521 (M.D. Pa. 2019) (concluding that

9

prisoner was not entitled to *Bivens* remedy for First Amendment retaliation claims). Accordingly, this claim has been withdrawn and is dismissed with prejudice.

### B. Fourth Amendment False Arrest/Malicious Prosecution and Fifth Amendment Fabrication of Evidence[2]

As for Plaintiff's remaining claims, I find that they improperly seek to extend *Bivens* to new contexts, and further, that special factors preclude such expansions. As discussed above, *supra*, the Supreme Court has provided a two-step analysis to determine whether a claim under *Bivens* may lie: (1) "[a] court asks first whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully different from the three cases in which the Court has implied a damages action[;]' and [(2)] if so, do 'special factors' indicate that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.' " *Egbert*, 142 S. Ct. at 1797-98 (internal citation and quotation marks omitted). These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1803.

First, under step one of the analysis, the Court must determine whether Plaintiff's claims present a new *Bivens* context. "[A] new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.' " *Id.* (citation omitted); *see also Abbasi*, 137 S. Ct. at 1864 ("[E]ven a modest extension is still an extension."); *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("[The Supreme Court's] understanding of a 'new context' is broad."). A "meaningful difference" sufficient to support a finding that a case presents a "new context" can be as minor as, *inter alia*, "the statutory or other legal mandate under which the officer was operating" or simply a "new category of defendants." *Abbasi*, 137 S. Ct. at 1857, 1860.

---

[2] Because these separate claims attempt to extend *Bivens* to similar contexts, the Court discusses them in tandem.

Here, the Court finds several "meaningful differences" present in this case. First, it is undeniable that Plaintiff asserts his Fourth and Fifth Amendment *Bivens* claims against a new category of defendant—DoD employees. *Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019) (finding new context in claims against military employees because "in contrast to *Bivens*, these defendants were officers in the United States Navy or employees of the Department of Defense, operating under naval regulations"); *Huckaby v. Bradley*, No. 16-4327, 2018 WL 2002790, at *8 (D.N.J. Apr. 30, 2018) ("The Court considers military personnel to be a new category of defendants, and a category that, under admittedly different circumstances, the Supreme Court has refused to extend a *Bivens* remedy to."). Critically, while the Court has extended a *Bivens* remedy to FBI agents (*Bivens*), a congressman (*Davis*), and federal prison officials (*Carlson*), "[t]he Supreme Court has never implied a *Bivens* remedy in a case involving the military, national security, or intelligence." *Hernandez v. Mesa*, 885 F.3d 811, 818–19 (5th Cir. 2018) (quoting *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012)) (emphasis added).

Moreover, Plaintiff's Fourth and Fifth Amendment claims are markedly different from those same claims asserted in *Bivens* and *Davis*. Indeed, *Bivens* involved false arrest and excessive force claims resulting from a warrantless search, not malicious prosecution. *Lane v. Schade*, No. 15-1568, 2018 WL 4571672, at *7 (D.N.J. Sept. 24, 2018 (refusing to "recognize a *Bivens* remedy for Lane's claims of malicious abuse of process or malicious prosecution") *Butler v. Hesch*, No. 16-1540, 2020 WL 1332476, at *12 (N.D.N.Y Mar. 23, 2020) (holding that claim of malicious prosecution against agents of U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives "cannot be shoehorned into *Bivens*, *Davis*, or *Carlson*"). Similarly, *Davis* involved claims arising under the Fifth Amendment for gender discrimination, not fabrication of evidence as Plaintiff asserts here.

Nevertheless, it appears that Plaintiff argues that this case would not extend *Bivens* to new contexts because Defendants merely served as "law enforcement officers," and courts have generally recognized *Bivens* claims under the Fourth and Fifth Amendments. However, Plaintiff's argument ignores persuasive case law. In that connection, I find the decision in *Morley v. U.S. Dep't of the Navy*, a case relied on by Defendants, directly analogous to the present circumstances. There, the plaintiff brought a *Bivens* claim against Defendants United States Department of the Navy and Brett A. Burroughs, Security Branch Head for the Naval Foundry and Propeller Center ("the Foundry") for violation of his due process rights under the Fifth Amendment following the revocation of the plaintiff's access to the military installation after a security violation. No. 20-4591, 2021 WL 4399653, at *1 (E.D. Pa. Sept. 27, 2021). Finding that the plaintiff's claims arose in a "new *Bivens* context," the court reasoned that the constitutional right at issue differed from the ones considered in *Bivens* (Fourth Amendment search-and-seizure case), *Davis* (Fifth Amendment equal protection case alleging sex-discrimination), and *Carlson* (Eighth Amendment medical care case) because the plaintiff alleged a due process violation of the Fifth Amendment connected to the revocation of his access to a military installation. *Id.* at *3 (citing *Loumiet v. USA*, 948 F.3d 376, 382 (DC Cir. 2020)). Further, the court found that the dispute in *Morley* arose because of the enforcement of security protocols at a military installation, "whereas *Bivens* involved the enforcement of federal drug laws; *Davis* involved employment decisions by members of Congress; and *Carlson* involved the provision of medical care to prisoners." *Id.* (quoting *Loumiet*, 948 F.3d at 382). Third, the court noted that Morley "seeks compensation from a new category of defendants." In that regard, while "the defendants in *Bivens* were federal narcotics agents; the defendant in *Davis* was a former member of Congress; and the defendants in *Carlson* were federal prison officials," the defendant in *Morley* was the Security Branch Head at a Naval

Shipyard installation. *Id.* Petrino did not distinguish the present case, which similarly concerns a new class of *Bivens* defendants and involves security at an active military installation, from the circumstances found in *Morley*. Accordingly, because there are "meaningful differences" between Plaintiff's claims and the three Supreme Court cases that recognized *Bivens* liability, this case presents a new *Bivens* context.

Having found that Plaintiff's claims present a new *Bivens* context, the Court must next determine whether any special factors counsel hesitation in extending *Bivens*. In this regard, the Supreme Court has "not attempted to create an exhaustive list of factors that may provide a reason not to extend *Bivens*." *Hernandez*, 140 S. Ct. at 743. However, a "special factor counseling hesitation" is merely a "reason to pause before applying *Bivens* in a new context or to a new class of defendants" and, if present, the court should "reject the request." *Id.*

Here, based on the nature of the allegations, namely Plaintiff's arrest at the entrance to an active military base, the Court finds that national security implications present a special factor counseling hesitation in extending *Bivens* to Plaintiff's claims. *Egbert*, 142 S. Ct. at 1804-05 (finding that "'[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention,'. . . a Bivens cause of action may not lie where, as here, national security is at issue.") (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). In opposition to Defendants' motion, Plaintiff attempts to minimize any national security concerns by likening the role performed by Defendants at Joint Base MDL to basic law enforcement, characterizing their responsibilities as involving "base security" rather than "national security." (Pl. Opp., 33.) Further, Plaintiff argues that "[t]hese stateside installations are not located in a hostile environment and are part of the community," and therefore, no national security interests are implicated. (*Id.* at 27.) I disagree. As highlighted by Defendants, numerous courts have found that military personnel who

perform base security at domestic military installations are responsible for protecting national security. *See*, *e.g.*, *United States v. Green*, 293 F.3d 855, 861 (5th Cir. 2002) (holding that national security requires the ability of military officials to conduct searches to protect domestic military installation); *United States v. Hawkins*, 249 F.3d 867, 873 (9th Cir. 2001) ("It is beyond dispute that the military has a substantial interest…in ensuring national security" at a domestic military base by utilizing checkpoints.); *United States v. Jenkins*, 986 F.2d 76, 78 (4th Cir. 1993) (security at a domestic military base serves "to protect a military installation that is vital to national security"); *United States v. Ellis*, 15 F. Supp. 2d 1025, 1029 (D. Colo. 1998) (noting "additional national security interest present in this case" involving checkpoint at domestic military base). Put simply, Plaintiff's claims implicate military and civilian DoD employees carrying out military regulations, *i.e.*, the military's policies for conducting security at the entrance to a military base. In this regard, the Court gives substantial weight to Defendants' position that these DoD employees performing security at a military base are tasked with assisting in a critical aspect of national security, and the threat of damages liability could increase the likelihood that these individuals "would hesitate in making split-second decisions" about suspicious visitors. (Def. Mov. Br., 17) (citing *Vanderklok*, 868 F.3d at 207). Accordingly, because I conclude that Plaintiff's Fourth and Fifth Amendment claims seek to extend *Bivens* to new contexts and that the application of *Bivens* to these new contexts counsels hesitation, no *Bivens* remedy is available here.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion is **GRANTED**.


Dated: October 25, 2022                     /s/ Freda L. Wolfson
                                            Freda L. Wolfson
                                            U.S. Chief District Judge